IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville July 24, 2018

**STATE OF TENNESSEE v. MARICK PETTIS**

**Appeal from the Criminal Court for Shelby County**
**Nos. 16-04565, 17-00238   Paula L. Skahan, Judge**

_____

**No. W2018-00102-CCA-R3-CD**

_____

The Appellant, Marick Pettis, pled guilty to being a felon in possession of a firearm and identity theft and received a total effective sentence of ten years.  Thereafter, the Appellant filed a "Petition for Suspension of Sentence," which was denied by the trial court.  The Appellant appeals.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and J. ROSS DYER, JJ., joined.

Jessica L. Gillentine (on appeal) and Monica Timmerman (at trial), Bartlett, Tennessee, for the Appellant, Marick Pettis.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Appellant, was charged with being a felon in possession of a firearm and identity theft and pled guilty to both offenses.  Pursuant to a plea agreement, the Appellant was sentenced as a Range II offender to consecutive sentences of four years for the firearms conviction and six years for the identity theft conviction.  The plea agreement did not address alternative sentencing.  The appellate record does not contain a transcript of the guilty plea hearing.

Immediately thereafter, the trial court considered the Appellant's "PETITION FOR SUSPENSION OF SENTENCE." Although the petition is not in the appellate record, the transcript of the hearing on the petition reflects the Appellant's mother, Patricia Roach, testified that prior to the Appellant's incarceration, he lived with her and his father. The Appellant had been employed, but she did not know the name of his employer. She stated that the Appellant could continue to live with them if he were granted probation and that they would ensure the Appellant attended all required meetings with his probation officer.

Roach said that the Appellant had a four-year-old son whom he supported. The Appellant had been given "time to think" about his charges, and she thought "he's going to do good." She did not know why the Appellant had missed a previous court date.

On cross-examination, Roach could not recall if the Appellant was living with her in 1993 when he "first started getting into trouble," explaining that in the past two years she had two strokes that affected her memory. She denied that her memory problems would impede her ability to help the Appellant "remember where he's supposed to be."

The Appellant testified he had a "pretty long [criminal] history" that began in 1993. He acknowledged that he amassed charges regularly until 2010 when he stopped "picking up cases quite so frequently." Regarding the conviction of being a felon in possession of a handgun, the Appellant acknowledged that he was on parole at the time the offense occurred. Nevertheless, he asserted that he was innocent of the charge because the gun belonged to his co-defendant and that he had entered an Alford[1] plea to maintain his innocence.

The Appellant said that if the trial court granted him probation, he would live with his mother. He maintained that if he were released from custody, he would take care of his mother, his son, and his son's mother, noting that none of them were employed. The Appellant acknowledged that the majority of his criminal history involved theft offenses but said that he would not return to theft to provide for his family. He said he would work for Trayvon Wilson, who performed housing demolition, noting that Wilson promised to provide consistent work for the Appellant. The Appellant said he had also worked for Decco, Seymour Staff, Technicolor, and Nike Factory during "peak season" and that he could find "pretty steady" work with those employers. Finally, the Appellant noted that his family's income was supplemented by a check his mother received.

---

[1] An accused who wishes to plead guilty yet assert his innocence may enter what is known as a "best interest" guilty plea. See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970). A trial court may accept such a plea if the court is satisfied that there is a factual basis for the plea. See Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).

The Appellant acknowledged that he would need to attend face-to-face meetings and/or have telephone meetings with his probation officer. He would ensure the meetings would not interfere with his employment.

The Appellant acknowledged that he knew he could not use drugs if he were granted probation. He had used marijuana in the past but had stopped using it. He denied drinking alcohol. He asserted that he would abide by any stipulations imposed by the trial court.

On cross-examination, the Appellant said that he was forty-four years old and that he began "getting in trouble" when he was nineteen years old. The Appellant had ten prior felony convictions, including five aggravated burglaries, two attempted thefts, and one attempted burglary. Additionally, he had some misdemeanor convictions. The Appellant said that the jobs he planned to work were "felony friendly jobs."

The Appellant acknowledged violating probation in 1993 and in 2005, once by failing a drug screen and once by picking up a new charge. Additionally, he violated parole in 2014 by being charged with the firearms offense. He denied telling the police that he was "trying to buy that weapon, that [he] just didn't have the money to get it," explaining that he knew he was not supposed to have a gun while on parole.

The trial court asked the Appellant why he continued to amass new charges. The Appellant responded that before his son was born, he was "mixed up with drugs pretty bad," namely cocaine and pills. The court noted that the Appellant did not tell the preparer of the presentence report about taking any drugs other than marijuana. The Appellant stated that he thought the preparer was asking about what kind of drugs he had done "recently." The court disagreed, noting that the preparer asked if the Appellant "had ever done any illegal drugs." The court said, "So it wasn't yesterday. And generally that you used it two or three times a week, reported that he has never used any other type of controlled substance, has never used any non-prescribed medication." The Appellant maintained that he "must have misunderstood the question."

The Appellant said that he went into a drug program when he was incarcerated in 2005 to begin serving a fourteen-year sentence. The Appellant was released at the beginning of 2010. Later that year, he was convicted of domestic violence and aggravated burglary.

At the conclusion of the hearing, the trial court stated:

> I'm sorry, he just has a horrible, horrible record. I understand his mother's there for him. She has a lot of

- 3 -

medical issues herself and really cannot watch him. He [is] maybe the one person that could help her but he's too busy using drugs and violating the law to be much of assistance to her.

And I do think it's necessary to protect society by restraining the [Appellant] who has a long history of criminal conduct. Measures less restricted than confinement has been applied unsuccessfully. I don't see the potential for rehabilitation with [the Appellant] unfortunately.

Accordingly, the trial court denied the Appellant's petition for a suspension of his sentence. On appeal, the Appellant challenges the trial court's ruling.

## II. Analysis

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The Appellant's sentences meet this requirement. Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

In its brief, the State noted that the appellate record does not contain a transcript of

the plea hearing or the "Petition for Suspension of Sentence." However, after the State's brief was filed, this court granted the Appellant's motion to supplement the record with the missing documents. The trial court clerk's office responded that "the requested transcript of the plea hearing or petition for suspension of sentence was not found or never ordered." The Appellant did not pursue any further means of supplementing the record. The Appellant carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

Regardless, from the record before us we conclude that the trial court did not abuse its discretion by denying alternative sentencing. The Appellant was sentenced as a Range II offender for the identity theft conviction, which deprives him of his favorable candidacy for alternative sentencing for that conviction. He was sentenced as a Range I offender for his conviction of being a convicted felon in possession of a handgun; therefore, he was considered to be a favorable candidate for alternative sentencing for that conviction.

At the conclusion of the hearing, the trial court found that the Appellant's long history of criminal conduct was demonstrated by his "horrible, horrible record" and that he repeatedly used drugs and violated the law. The court further found that measures less restrictive than confinement had been unsuccessful and that the Appellant had poor potential for rehabilitation. The record supports the trial court's findings. See State v. Michael Eugene Jones, No. M2016-02277-CCA-R3-CD, 2017 WL 2684609, at *4 (Tenn. Crim. App. at Nashville, June 21, 2017), perm. to appeal denied (Tenn., Sept. 21, 2017).

### III.  Conclusion

The judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE